UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:12-CV-00038-R

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, as subrogee of
SUPERIOR GRAPHITE COMPANY                                              PLAINTIFF

v.

RAPID POWER CORPORATION and
DYNAPOWER COMPANY                                                      DEFENDANTS

### MEMORANDUM OPINION

This matter comes before the Court on the Defendants' motion for summary judgment. (Defs.' Mot. Summ. J., Docket Number ("DN") 45.) The Plaintiff responded. (Pl.'s Resp., DN 49.) The Defendants replied. (Defs.' Reply, DN 50.) Fully briefed, this matter is now ripe for adjudication. For all of the following reasons, the Defendants' motion is **GRANTED**.

### I.

The Defendants, Rapid Power Corporation and Dynapower Company (referred to collectively as "Dynapower"),[1] design and manufacture power generation equipment for industrial clients. Subrogor Superior Graphite Company ("Superior") manufactures a variety of graphite-derived products. Superior uses Dynapower's equipment to generate electricity for use in some of its industrial processes. During the period relevant to this action, Subrogee Travelers Property Casualty Company of American ("Travelers") insured property located at Superior's Hopkinsville, Kentucky production facility.

This action arises from the manufacture and sale of a rectifier transformer by Dynapower to Superior. The Court provides the following limited recitation of facts and supplements as

---

[1] During the periods relevant to this action, Defendant Rapid Power Corporation was a wholly-owned subsidiary of Defendant Dynapower Company. Like the parties in their briefs, the Court refers to the Defendants collectively as "Dynapower."

1

appropriate in the analysis below.

Superior solicited Dynapower to build the rectifier transformer at issue as a replacement for a substantially similar transformer previously built by Dynapower for the Hopkinsville facility. Dynapower submitted a proposal to Superior for the replacement transformer on February 13, 2008. Five days later, on February 18, 2008, Superior and Dynapower entered into a written contract for the purchase of the transformer. This contract contained the material provisions governing the agreement and the express warranties discussed below. The transformer was delivered to Superior's production facility in Hopkinsville on September 8, 2008. Superior installed the transformer when received. Dynapower played no role in the installation. The transformer functioned without issue until February 1, 2011, when it was destroyed in a catastrophic failure. Travelers contends that Dynapower is responsible for the failure.

Travelers insured property at the Hopkinsville facility and paid Superior the proceeds of the policy that covered the transformer. Travelers, acting as subrogee to Superior, now seeks to recover those proceeds from Dynapower. Travelers pursues recovery on a number of theories, including breach of contract, breach of express warranty, negligence, and strict products liability. Dynapower moves for summary judgment on all counts. It contends that the economic loss rule bars the tort claims for negligence and strict products liability. Furthermore, it argues that the record of evidence demonstrates a lack of any genuine dispute and that it did not breach the contract with Superior or the express warranty contained therein.

II.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

While the substantive law of Kentucky is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Federal Rule of Civil Procedure 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993) (abrogated on other grounds in *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010)).

### III.

Travelers claims that Dynapower is labile for damages under the tort theories of negligence and strict products liability. According to Travelers, the transformer catastrophically

3

failed because Dynapower did not incorporate a device known as a "snubber" into the transformer's design, or did not, at minimum, recommend that Superior install a snubber external to the transformer. In other words, Travelers claims that Dynapower had a duty to either incorporate or recommend the installation of components that could have prevented the transformer's failure but negligently failed to do so.

Charles Raymond, an expert witness for Travelers, described the need for snubbers in his report:

> [Dynapower] should have recognized the risk to the transformer caused by vacuum switching and recommended the application of components to mitigate the risk of transient damage to the transformer insulation. The risks to transformers caused by vacuum switches are well known to transformer manufacturers and effective means of mitigating the operational risk caused by switching transients through the application of resistor-capacitor combinations known as "snubbers" have been established.
> . . . .
> As a manufacturer of transformers, [Dynapower] was in a position to recognize the hazard to transformer windings caused by vacuum switching and recommend steps for mitigation of any potential damage. The effective mitigation by the use of snubbers is well known, and was state-of-the-art at the time and [Dynapower] should have recognized the operating life of the rectifier power supply . . . at Superior was substandard based on their involvement with this site.

(Raymond Report, DN 45-9, p. 18.) In its motion for summary judgment, Dynapower argues that the negligence and strict products liability claims arising from its alleged failure to incorporate or otherwise recommend the use of snubbers are barred by the "economic loss rule." The Court agrees.

"The economic loss rule marks the border between tort and contract law." *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002) (applying Kentucky law). It bars recovery in tort for two types of economic loss: direct economic loss – "loss in the value of the product caused by a defect in that product" – and consequential economic loss – "consequential loss flowing from the defect, such as lost profits."

4

*Id.* In all, the rule "prevents the commercial purchaser of a product from suing in tort to recover for economic losses arising from the malfunction of the product itself, recognizing that such damages must be recovered, if at all, pursuant to contract law." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733 (Ky. 2011). "Thus, costs for repair or replacement of the product itself, lost profits and similar economic losses cannot be recovered pursuant to negligence or strict liability theories but are recoverable only under the parties' contract, including any express or implied warranties." *Id.* at 738. The economic loss rule was expressly incorporated into Kentucky law by the Kentucky Supreme Court's 2011 decision in *Giddings & Lewis*. *Id.* at 733 ("Today we hold that the economic loss rule applies to claims arising from a defective products sold in a commercial transaction . . . ."). The rule bars Travelers's claims for negligence and strict products liability in this action.

The conclusions in the expert's report excerpted above are stated in terms of tort liability. Finding that "[Dynapower] should have recognized the risk" and was "in a position to recognize the hazard" is simply another way of claiming Dynapower had a duty to protect Superior for losses associated with the transformer. This, however, is the exact situation governed by the economic loss rule, and Dynapower's liability for damages, if any, will arise out of the contract for the sale of the transformer and any warranties thereto. Tort liability is precluded by the economic loss rule in this action.

In an attempt to circumvent the economic loss rule, Travelers advocates for two exceptions. First, where "other property" external to the good at issue is damaged, recovery for the other damages may be pursued in tort. *Giddings & Lewis*, 348 S.W.3d at 733 ("Damages for injuries to persons or 'other property' may be recovered in tort . . . ."). The classic example is a products liability case where a plaintiff seeks to recover for personal injuries caused by a

5

manufacturer's product. The exception also extends to damages caused to real and personal property external to the product.

Travelers argues that the "other property" exception applies in this case because 300 feet of electrical cable, which was external to and not part of the transformer, was damaged when the transformer failed. This is the only "other property" damage in this case. As alleged, all other damage was contained within the transformer. Evidence in the record shows that the damaged cable was replaced for $7,221.40. By comparison, total repairs to the transformer, including the damaged cable and excluding the insurance policy deductible, were $628,323.55. The "other property" damage represents just 1.1 percent of the damages resulting from the transformer's failure.

Although "other property" damages may be recovered outside of the economic loss rule, the exception is inapplicable where the other damage is *de minimis*. *See Giddings & Lewis*, 348 S.W.3d at 744 n.10 (citing *Delmarva Power & Light v. Meter-Treater, Inc.*, 218 F. Supp. 2d 564, 570-71 (D. Del. 2002) (collecting cases where minimal damage to other property does not trigger the exception to the economic loss rule)). "Incidental property damage . . . will not take a commercial dispute outside the economic loss doctrine; the tail will not be allowed to wag the dog." *Miller v. U.S. Steel Corp.*, 902 F.2d 573, 576 (7th Cir. 1990) (Posner, J.) (citation omitted); *see McCracken Cnty. Sch. Bd. v. Hoover Universal, Inc.*, No. CIV.A. 93-0164-P(J), 1994 WL 1248581 (W.D. Ky. Sept. 28, 1994). The "other property" exception to the economic loss rule is not applicable in this action because such damage was *de minimis* in comparison to the total damages. *Florida Power & Light Co. v. McGraw Edison Co.*, 696 F. Supp. 617, 620 (S.D. Fl. 1988) ("[T]o permit recovery in tort where the only property damages has been minimal damage to surrounding structures and components necessary for proper operation of the machine

would be unjustified.").

Second, Travelers claims that services performed outside of the sale of the transformer also preclude application of the economic loss rule. In support of its position, Travelers relies on *Cargill, Inc. v. Boag Cold Storage Warehouse, Inc.*, 71 F.3d 545 (6th Cir. 1995). *Cargill* is not applicable to this case, however, because it did not involve the sale of goods. *Cargill* "is not a suit against a manufacturer that sold defective goods; it is a suit by a manufacturer against a provider of services (frozen good warehousing) that injured the reputation of similarly branded products that were not defective." *Id.* at 550. Because *Cargill* involved contracts for services and not goods, that case is distinguishable from and not applicable to the present case.

Here, Travelers complains that Dynapower negligently performed services that were outside of the four corners of the sales contract. Although these actions are allegedly separate from the sale of goods, the record shows that the services were merely part of the design, manufacture, or sale of the transformer. Travelers argues that Dynapower failed to incorporate snubbers into the transformer, failed to properly design the transformer, and that its employees failed to recognize that snubbers were necessary where Superior used vacuum breakers and switches at its facility. These allegations all relate to the sale of the transformer, a transaction in the sale of goods, and recovery for any liability must be pursued as a breach of contract, not in tort.

Under the economic loss rule, Travelers cannot maintain a negligence action for services performed in conjunction with the sale of goods. This outcome was recognized in *East River S.S. Corporation v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986). There, damage to turbines in ships' engines allegedly occurred because the turbines were negligently manufactured. *E. River S.S. Corp.*, 476 U.S. at 867. The defendant manufacturer was obligated to supervise the

7

construction of the turbines, and it was alleged that it acted negligently in doing so. *Id.* The Court found that these allegations had "certain attributes of a products-liability claim. But the injury suffered–the failure of the product to function properly–is the essence of a warranty action" for which damages were recoverable under contract, not tort, law. *Id.*

Like the plaintiff in *East River*, Travelers alleges that Dynapower negligently manufactured the transformer because it failed to incorporate or recommend the installation of snubbers. Although this claim has "certain attributes of a products-liability claim . . . the injury suffered . . . is the essence of a warranty action." *Id.* Therefore, any recovery Travelers obtains as a result Dynapower's negligent performance of services relating to the sale of the transformer must be recovered under contract, not tort.

Based on the foregoing, Travelers's causes of action for negligence and strict products liability asserted in Counts II, IV, V, and VI are barred by the economic loss rule. Dynapower will be granted summary judgment on those claims.

## IV.

Unable to recover against Dynapower in tort, Travelers also alleges breach of contract and express warranty. Dynapower moves for summary judgment on these claims on a number of grounds, including inadequate notice of breach of warranty, waiver and estoppel, accord and satisfaction, and lack of a genuine dispute that Dynapower breached the express warranty in the written contract with Superior. Ultimately, the Court finds that no genuine dispute exits as to whether Dynapower breached the express warranty in the written contract. Dynapower will be granted summary judgment on the breach of contract and express warranty claims.

### A.

Dynapower first argues summary judgment is due on the breach of contract and express

warranty claims because it did not receive notice of the breach from Superior "within a reasonable time" after the breach was discovered. Section 2-607 of the Uniform Commercial Code governs the notice argument and has been incorporated into Kentucky law in its entirety by KRS § 355.2-607. The subsection at issue in this case provides that "[w]here a tender has been accepted[,] the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from remedy." KRS § 355.2-607(3)(a). The parties spend significant portions of their briefs addressing the facts and law relating to the issue of notice under KRS § 355.2-607(3)(a). Neither party, however, cited to or otherwise addressed the Kentucky Supreme Court's decision in *Mullins v. Wyatt*, 887 S.W.2d 356 (Ky. 1994).

In *Mullins*, the issue was "whether KRS 355.2-607(3)(a) makes pre-litigation notice a condition precedent to a civil action for breach of warranty of title, or whether service of the summons and complaint satisfied the notice requirement." *Mullins*, 887 S.W.2d at 356. The court held that "failure to give notice [prior to service of the summons and complaint] is not fatal to a civil action for breach of warranty." *Id.* at 358. Arriving at this outcome, the court acknowledged that "text writers and most decisional law treat pre-litigation notice as a condition precedent to bringing of a civil action for breach of warranty." *Id.* at 357. The court explained its departure from the majority interpretation of UCC § 2-607(3)(a) on grounds that the reason underlying pre-litigation notice – the opportunity for pre-litigation settlement – was "insufficient to justify holding claims for breach of warranty without pre-litigation notice to be barred[.]"

Subsequent to the *Mullins* decision, Kentucky follows the minority rule that under UCC § 2-607(3)(a) the buyer gives notice of a claim for breach of warranty "within a reasonable time" when he serves the seller with the summons and complaint alleging such. *See* 4 Ky. Practice, Methods of Practice, *Commercial Transactions* § 3:96 (4th ed. 2012) ("[F]ailure to give

9

prelitigation notice of breach of warranty will not bar suit, and service of summons and complaint may satisfy the notice requirement."); *see also Shooshanian v. Wagner*, 672 P.2d 455, 463 (Alaska 1983) (filing of complaint satisfies the statutory notice requirement); *Hudson v. Gaines*, 403 S.E.2d 852, 854 (Ga. 1991) (same). Accordingly, the Court finds that Dynapower received notice of Superior's breach of warranty claim for the purposes of KRS § 355.2-607(3)(a) when it received the summons and complaint. Dynapower's arguments to the contrary are unavailing in light of *Mullins*.

### B.

Dynapower also seeks summary judgment on the breach of contract and express warranty claims under the affirmative defenses of waiver and estoppel and accord and satisfaction. The Court need not address these defenses, however, because it finds that under the facts of this case no genuine dispute exists and Dynapower did not breach the contract or the express warranty contained therein. This outcome is based on the language of the express warranty governing the sale of the transformer and the nature of the claims asserted by Travelers.

In the contract for sale, Dynapower granted Superior certain express warranties. (*See* Contract, DN 46-1, pp. 7-8.) In relevant part, Dynapower warranted the following:

> All transformers, chokes, other coils and diode and thryistor assembles (excluding the diodes and thryistors) manufactured by Dynapower Corporation for five (5) years and Rapid Power Corporation for three (3) years from date of shipment.

(*Id.* at p. 7.) Dynapower guaranteed that the products covered by the warranty "will be free from defects in design, material and workmanship and will conform to the specifications as stipulated in this contract." (*Id.*) In the Complaint, Travelers alleges that Dynapower breached the terms of the express warranty against design defect because "it failed to incorporate 'snubbers' and/or 'RC filters' into its design." (Compl., DN 1-1, ¶ 27.) As discussed above, Travelers theorizes

10

that the transformer at issue failed because Dynapower should have but did not recognize that the specific configuration of the electrical system at Superior's Hopkinsville plant required the installation of snubbers, which would have prevented vacuum switches from damaging the transformer. Although the express warranty guarantees that the transformer will be "free from defects in design," the Court finds that Travelers's arguments under the express warranty fail for two reasons. First, the incorporation of a snubber is not covered by the express warranty because it is a wholly separate device and was not bargained for, specified, or included in the contract for the sale of the transformer. Second, Travelers has not argued that a snubber should be incorporated into or recommended for *all* of Dynapower's transformers. Instead, Travelers claims that a snubber should have been incorporated into or recommended for *this* transformer. No matter how it is pleaded, this argument is akin to a claim for breach of the implied warranty of fitness for a particular purpose. Travelers has merely attempted to repackage it in terms of the express warranty. Such efforts fail because the parties expressly waived all implied warranties under the contract.

1.

Travelers claims that Dynapower breached the express warranty because it failed to incorporate a snubber into the transformer's design. Although the express warranty states that the transformer will be free from defects in design, Travelers's argument fails because a snubber is a wholly separate device from the transformer and the warranty does not extend to it. Bruce Williams, Superior's Engineering Manager and the individual who issued the purchase order from Superior to Dynapower for the transformer, admitted in his deposition that that he did not consider a snubber to be part of the transformer. (*See* Williams Dep., DN 45-5, p. 60:20-24.) Superior's Electrical Supervisor, Jeff Radford, also testified that a snubber is external to and sits

11

between five and eight feet away from the transformer. (*See* Radford Dep., DN 45-11, p. 61:16-24.)  The purchase order and the final contract list a number of components to be included with and as part of the transformer, but a snubber is not included. (*See* Purchase Order, DN 45-7, p. 11; Contract, DN 46-1, pp. 5-9.)  A purchase order for snubbers that Superior bought from Dynapower subsequent to the transformer's failure states that they are "stand alone," meaning they are separate and independent from any other device or equipment. (*See* Contract, DN 45-4, p. 44.)  Finally, statements in Travelers's brief in response to the motion for summary judgment confirm that it does not consider a snubber to be part of the transformer. (*See* Pl.'s Resp., DN 49-1, p. 6 ("[Travelers's expert] considers snubbers to be part of the A.C./D.C. Power System that would be used *in conjunction with* a rectifier transformer . . .") (emphasis added); *Id.* at p. 29 ("While the snubber *may not be a component part* of the subject transformer, it would be contained in the same electrical line and should be taken into consideration during design of the transformer.") (emphasis added)).  Based on this evidence, there is no genuine dispute that a snubber is not part of the transformer.  Rather, it is an external, stand-alone device.  As such, it was not part of the transformer's design, and the express warranty covering the transformer does not extend to it.  Because the snubber was a separate piece of equipment, it was not covered by the express warranty guaranteeing the transformer against design defect.

### 2.

In addition to the foregoing, the true nature of Travelers's claim for design defect demonstrates that its actual theory of recovery was disclaimed by Superior.  Travelers repeatedly argues that Dynapower "should have known" or "should have recognized" that use of a snubber was necessary in conjunction with the vacuum switches and other electrical system components at Superior's Hopkinsville facility.  By not taking these external considerations into account,

Travelers asserts that Dynapower defectively designed its transformer, thereby breaching the express warranty against design defect. Although Travelers couches its argument in terms of a design defect, its claim is more akin to one for breach of the implied warranty of fitness for a particular purpose. The elements necessary for this implied warranty reveal that this is the true nature of Travelers's claim.

"The existence of an implied warranty of fitness for a particular purpose is contingent on two general facts. First, the seller must be aware at the time of contracting of a particular purpose for which the buyer intended to use the goods. Second, the buyer must rely on the seller's skill or judgment to select or furnish goods suitable for that particular purpose." *Price Bros. Co. v. Philadelphia Gear Corp.*, 649 F.2d 416, 423 (6th Cir. 1981) (citation omitted); *see* KRS § 355.2-315 (Kentucky's adoption of U.C.C. § 2-315).

The report produced by Travelers's expert, Charles Raymond, demonstrates that Travelers argues both of the elements of implied warranty of fitness for a particular purpose as a rebranded claim for breach of express warranty. First, Raymond's opines that that the vacuum switches at the Hopkinsville facility interfered with the transformer's performance, eventually leading to its failure. (*See* Raymond Report, DN 45-9, p. 16.) According to Raymond, "[l]ater evidence has indicated that [Dynapower] was given information that vacuum switches were employed at Superior Hopkinsville." Based on this, Raymond claims that Dynapower was aware that Superior intended to use the transformer in conjunction with vacuum switches, the particular purpose. Second, he claims in at least two different portions of his report that Superior relied on Dynapower's skill and judgment to furnish a transformer that would work with the electrical system at the Hopkinsville facility. "As a manufacturer of transformers, [Dynapower] was in a position to recognize the hazard to the [transformer] caused by vacuum switching and

13

recommend steps for mitigation of any potential damage." (*Id.* at p. 18.)  Additionally, "[Dynapower was] contracted to provide an engineering inspection with specific reference to the adequacy of the power lead assembly and connections. In spite of prior problems with the power lead routing and connections, [Dynapower] failed to provide any warning or advice." (*Id.* at p. 20.)

Based on the foregoing, it is clear that although Travelers seeks to bring a claim for breach of the express warranty against design defect, its claim is, in all reality, one for breach of the implied warranty of fitness for a particular purpose. This claim fails, however, because the plain language of the contract between Dynapower and Superior disclaims all implied warranties, including the implied warranty of fitness for a particular purpose. "To exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." KRS § 355.2-316(2). The contract governing the sale of the transformer provides:

> THE FOREGOING WARRANTIES ARE EXCLUSIVE AS TO THE PRODUCTS AND/OR SERVICES PROVIDED UNDER THIS PURCHASE ORDER AND ARE GIVEN AND ACCEPTED IN LIEU OF (I) ANY AND ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, *INCLUDING WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE* . . . .

(Contract, DN 46-1, p. 9 (emphasis added)). By agreeing to this provision, Superior clearly disclaimed any remedy for the breach of the warranty of fitness for a particular purpose. As such, this claim, although stated in term of a breach of express warranty, must fail because Superior contracted away its right to pursue it.

In conclusion, Dynapower will be granted summary judgment on Travelers's claims for breach of contract and express warranty asserted in Counts I and III. Snubbers are independent devices that were not part of the transformer's design. Furthermore, any argument that Dynapower knew that snubbers were needed at the Hopkinsville facility and that Superior relied

on Dynapower's expertise is more akin to a claim for breach of the implied warranty of fitness for a particular purpose and was expressly disclaimed by Superior.

## CONCLUSION

Defendants Dynapower Company and Rapid Power Corporation moved for summary judgment on all claims asserted by Plaintiff Travelers Property Casualty Company of America, as subrogee of Superior Graphite Company.  For all of the foregoing reasons, the Defendants' motion is **GRANTED**.  A separate order and judgment shall issue separately from this memorandum opinion.