UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00038-TBR

TRAVELER'S PROPERTY CASUALTY                                               Plaintiff
COMPANY OF AMERICA, as subrogee of
SUPERIOR GRAPHITE COMPANY

v.

RAPID POWER CORPORATION and                                              Defendants
DYNAPOWER COMPANY

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Plaintiff Travelers Property Casualty Company of America's, as subrogee of Superior Graphite Company, Motion for Reconsideration of the Order at Docket No. 51 granting summary judgment to Defendants Rapid Power Corporation and Dynapower Company. (Docket No. 53.) Defendants have responded. (Docket No. 54.) Plaintiff has replied. (Docket No. 57.) For the following reasons, the Court will **DENY in part** Plaintiff's Motion for Reconsideration as to the strict products liability and the express warranty claims.

As for the negligence claim, as noted below, it will be premised on Dynapower's performance of "start up assistance" under the service contract. The Court would like to speak with the parties in a telephone conference concerning this issue and may require further briefing. The Court **ORDERS** a telephone conference set for **01/02/14 at 3:30 Central Time**. The Court will place the call. The Court also **ORDERS** the parties to produce the full depositions of Morelli and Kezelian.

BACKGROUND

A limited recitation of facts is helpful for understanding the issues involved in this Motion for Reconsideration. These facts will be supplemented as appropriate in the analysis below. The Defendants, Rapid Power Corporation and Dynapower Company (referred to collectively as "Dynapower"),[1] design and manufacture power generation equipment for industrial clients. Subrogor Superior Graphite Company ("Superior") manufactures a variety of graphite-derived products. Superior uses Dynapower's equipment to generate electricity for use in some of its industrial processes. During the period relevant to this action, Subrogee Travelers Property Casualty Company of American ("Travelers") insured property located at Superior's Hopkinsville, Kentucky production facility.

This action arises from the manufacture and sale of a rectifier transformer by Dynapower to Superior. Superior solicited Dynapower to build the rectifier transformer at issue as a replacement for a substantially similar transformer previously built by Dynapower for the Hopkinsville facility. On February 18, 2008, Superior and Dynapower entered into a written contract for the purchase of the transformer. This contract contained the material provisions governing the agreement and the express warranties discussed below. The transformer functioned without issue until February 1, 2011, when it was destroyed in a catastrophic failure.

According to Travelers, the transformer catastrophically failed because Dynapower did not incorporate a device known as a "snubber" into the transformer's

---

[1] During the periods relevant to this action, Defendant Rapid Power Corporation was a wholly-owned subsidiary of Defendant Dynapower Company. Like the parties in their briefs, the Court refers to the Defendants collectively as "Dynapower."

design, or did not, at a minimum, recommend that Superior install a snubber external to the transformer.  In other words, Travelers claims that Dynapower had a duty to either incorporate or recommend the installation of components that could have prevented the transformer's failure but negligently failed to do so.

Travelers insured property at the Hopkinsville facility and paid Superior the proceeds of the policy that covered the transformer.  Travelers, acting as subrogee to Superior, sought to recover those proceeds from Dynapower.  Travelers pursued recovery on a number of theories, including breach of contract, breach of express warranty, negligence, and strict products liability.  Dynapower moved for summary judgment on all counts.

The Court's Prior Holdings at Docket No. 51 Granting Defendants Summary Judgment

The Court previously held that negligence and strict products liability claims arising from Dynapower's alleged failure to incorporate or otherwise recommend the use of "snubbers" was bared by the economic loss rule.[2]  (Docket No. 51, Pg. 4.) Plaintiff Travelers argued for the application of two exceptions to the economic loss rule.  As for the first exception, the Court held that the "other property" damages exception to the economic loss rule is inapplicable where the other damage is *de minimis* in comparison to the total damages—as in this case.  As for the second exception, the Court held that *Cargill*—which permitted claims by a manufacturer against a provider of services (frozen good warehousing)—was not applicable because it involved contracts for services rather than goods. *Cargill, Inc. v. Boag Cold Storage*

---

[2] Under the economic loss rule economic losses arising from the malfunction of a product must be recovered, if at all, pursuant to contract law and not in tort.  *See Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733, 738 (Ky. 2011).

*Warehouse, Inc.*, 71 F.3d 545 (6th Cir. 1995). Significantly, in finding the second exception was not applicable in this case, the Court held that Dynapower's services were not separate from the sale of goods and were "merely part of the design, manufacture, or sale of the transformer." (Docket No. 51, Pg. 7.) This finding by the Court is the one primarily challenged by Travelers' Motion for Reconsideration.

Travelers also alleged breach of contract and express warranty. The Court found there was no genuine dispute as to whether Dynapower breached the express warranty in the written contract:

> As discussed above, Travelers theorizes that the transformer at issue failed because Dynapower should have but did not recognize that the specific configuration of the electrical system at Superior's Hopkinsville plant required the installation of snubbers, which would have prevented vacuum switches from damaging the transformer. Although the express warranty guarantees that the transformer will be "free from defects in design," the Court finds that Travelers's arguments under the express warranty fail for two reasons. First, the incorporation of a snubber is not covered by the express warranty because it is a wholly separate device and was not bargained for, specified, or included in the contract for the sale of the transformer. Second, Travelers has not argued that a snubber should be incorporated into or recommended for *all* of Dynapower's transformers. Instead, Travelers claims that a snubber should have been incorporated into or recommended for *this* transformer. No matter how it is pleaded, this argument is akin to a claim for breach of the implied warranty of fitness for a particular purpose. Travelers has merely attempted to repackage it in terms of the express warranty. Such efforts fail because the parties expressly waived all implied warranties under the contract.

(Docket No. 51, Pg. 10-11.)

STANDARD

Although the Federal Rules of Civil Procedure do not provide expressly for "motions for reconsideration," courts generally construe such motions as motions to alter or amend a judgment under Rule 59(e).[3] *E.g.*, *Moody v. Pepsi-Cola Metro. Bottling Co.*, 915 F. 2d 201, 206 (6th Cir. 1990); *Taylor v. Colo. State Univ.*, 2013 WL 1563233, at *8-9 (W.D. Ky. Apr. 12, 2013).

The Sixth Circuit has consistently held that a Rule 59 motion should not be used either to reargue a case on the merits or to reargue issues already presented, *see Whitehead v. Bowen*, 301 F. App'x. 484, 489 (6th Cir. 2008) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)), or otherwise to "merely restyle or rehash the initial issues," *White v. Hitachi, Ltd.*, 2008 WL 782565, at *1 (E.D. Tenn. Mar. 20, 2008) (internal quotation marks and citation omitted). "It is not the function of a motion to reconsider arguments already considered and rejected by the court." *Id.* (citation omitted).

As another district court in this Circuit put it, "Where a party views the law in a light contrary to that of this Court, its proper recourse is not by way of a motion for reconsideration but appeal to the Sixth Circuit." *Hitachi Med. Sys. Am., Inc. v. Branch*, 2010 WL 2836788, at *1 (N.D. Ohio July 20, 2010) (internal quotation marks and citations omitted). Accordingly, the Sixth Circuit instructs that a motion for reconsideration should only be granted on four grounds: "Under Rule 59, a court may

---

[3] The Court notes that FRCP 59(e) requires that a "motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." The Judgment as to Plaintiff was entered on May 3, 2013, at Docket No. 51. Plaintiff's motion to reconsider was filed on May 13, 2013.

alter or amend a judgment based on: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). Furthermore, because there is an interest in the finality of a decision, this Court and other district courts have held that "[s]uch motions are extraordinary and sparingly granted." *Marshall v. Johnson*, 2007 WL 1175046, at *2 (W.D. Ky. Apr. 19, 2007) (citing *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995)); *accord Rottmund v. Cont'l Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992).

DISCUSSION

I. The Court Previously Misconstrued the Factual Background Concerning Defendants' Service Visits

Travelers argues the Court has misconstrued the factual background concerning Dynapower's service visits. Specifically, Travelers takes issue with the Court holding that Dynapower's performance of services "were merely part of the design, manufacture, or sale of the transformer." (Docket No. 51, Pg. 7.) Travelers points out that the original contract for sale of the transformer did not contain provisions for services. Rather, Travelers alleges for each instance where employees of Dynapower came to the Superior Graphite facility for an issue that did not involve warranty issues, a separate agreement between the parties was entered into. (*See* Docket No. 49-4.) These separate agreements allegedly contained separate terms and conditions and a

separate payment that was not included in the original contract for the rectifier transformer.

The Court finds that the documents at Docket No. 49-4 substantiates Travelers' claims of separate agreements/transactions for these services and that they were not included in or contemplated in the original contract entered into between the parties.[4] As a result, the Court was incorrect to construe such services as "merely part of the design, manufacture, or sale of the transformer." (Docket No. 51, Pg. 7.) These services include "on site start up assistance," (Docket No. 49-4, Pg. 16-18), and service work for an unbalanced line current. (Docket No. 49-4, Page 18-19.) Accordingly, the Court must determine what impact, if any, the Court's misconstruction of the factual background concerning Dynapower's service visits had.

II. Impact of the Court's Misconstruction of Factual Background of Defendants' Service Visits

The Court's prior holdings finding that the negligence and strict products liability claims were barred by the economic loss rule were based on the finding that the services Dynapower performed was pursuant to the original contract and "merely part of the design, manufacture, or sale of the transformer." Notwithstanding this change in factual background, Dynapower argues the economic loss rule still applies.

The economic loss rule has evolved through the years as a principle whose purpose is to preserve the valid distinctions between tort and contract claims. *Louisville Gas & Elec. Co. v. Cont'l Field Sys., Inc.*, 420 F. Supp. 2d 764, 768 (W.D. Ky. 2005).

---

[4] Supporting the conclusion that these were separate transactions for services is the fact the original contract for the sale of the transformer did not contain any service provisions, separate agreements for services rendered have been produced, and Dynapower billed for the services provided.

"The 'economic loss rule' prevents the commercial purchaser of a product from suing in tort to recover for economic losses arising from the malfunction of the product itself, recognizing that such damages must be recovered, if at all, pursuant to contract law." *Rodrock v. Gumz*, 4:11CV-00141-JHM, 2012 WL 1424501, at *2 (W.D. Ky. Apr. 24, 2012) (*citing Giddings & Lewis, Inc. v. Industrial Risk Insurers,* 348 S.W.3d 729, 733 (Ky. 2011)). In other words, "the rule 'prohibits purchasers of products from recovering purely economic damages under most tort theories." *Id.* (citations omitted).

*East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 867 (1986), applied the economic loss rule to bar tort claims for damages caused by start-up services which the contract for the sale of the product required. Plaintiff Travelers would limit the rationale of *East River* to cases in which the contract for sale of the product requires services of the product, while Dynapower argues *East River* did not expressly restrict its rationale in that way and its reasoning should extend to instances where there was a separate contract for start up services. However, subsequent cases applying Kentucky law have made clear that the economic loss rule does not apply to a service contract.[5] *See, e.g., Ronald A. Chisholm, Ltd. v. Am. Cold Storage, Inc.*, 3:09-CV-00808-CRS, 2013 WL 2242648, at *11 (W.D. Ky. May 21, 2013) (summarizing precedent and finding rule's application is limited to claims arising from a product sold

---

[5] Defendants argued that under Kentucky law a breach of a duty which arises from a contract between the parties must be redressed under contract—a tort action will not lie, relying on *Thorton v. Western & Southern Financial Group Beneflex Plan*, 797 F. Supp. 2d 796 (W.D. Ky. 2011). The Court agrees with Plaintiff that *Thorton* is readily distinguishable because that portion of the opinion concerned whether the plaintiff owed a *fiduciary* duty. Furthermore, subsequent cases have made clear that Kentucky's economic loss rule does not apply to service contracts—which would clearly be at odds with the broad interpretation Defendants argue for.

The Court also agrees that *Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F.Supp.2d 955 (W.D. Ky. 2007), is readily distinguishable because that case addresses application of the economic loss rule in the context of a fraud claim found to be intertwined with a breach of contract claim and has no bearing on this case involving a service contract.

in a commercial transaction); *Rodrock v. Gumz*, 4:11CV-00141-JHM, 2012 WL 1424501, at *4 (W.D. Ky. Apr. 24, 2012) (holding plaintiff's claims were not barred by the rule because the application of the rule is limited "to claims arising from a defective product sold in a commercial transaction"); *Lewis v. Ceralvo Holdings, LLC*, 4:11-CV-00055-JHM, 2012 WL 32607, at *2-*3 (W.D. Ky. Jan 6, 2012); *Louisville Gas & Elec. Co. v. Cont'l Field Sys., Inc.*, 420 F. Supp. 2d 764, 769 (W.D. Ky. 2005) (finding Kentucky economic loss rule did not apply to the provision of services); *Giddings & Lewis, Inc. v. Industrial Risk Insurers,* 348 S.W.3d 729, 733 (Ky. 2011) (limiting holding to "claims arising from a defective product sold in a commercial transaction").

Notwithstanding the above precedent, Dyanpower argues that the economic loss rule applies to services to start up the product sold, relying on *East River*. However, in *East River* the services were required under the contract for sale of the product. *East River*, 476 U.S. at 859. In this case, the services—most notably services for "start up assistance"—were not required under the contract for sale and were performed pursuant to separate agreements. (Docket No. 49-4, Pg. 16.) While Dynapower appears to assert different treatment depending on whether or not the service to "start up" a product is done pursuant to the contract for sale or through a separate agreement results in arbitrary distinction, the Court does not agree and in any event is guided by the above precedent establishing that the economic loss rule does not apply to service contracts.[6]

---

[6] While Dynapower does not expressly state as much, implicitly they have argued for an exception to the general rule that the economic loss rule does not apply to service contracts in the context of a service contract to "start up" a product previously sold by the provider of the service. Admittedly, there may be some logic to such an exception. However, there is no indication Kentucky courts would carve out such an exception. Furthermore, federal court precedent and the limited guidance from Kentucky courts clearly establish the economic loss rule does not apply to service contracts—with no indication the treatment would be different merely because the services rendered is for "start up" of a product previously sold by the

Accordingly, assisting in the start up of a product pursuant to contract for sale and assisting in the start up of a product pursuant to a separate service agreement have different treatments under the economic loss rule in Kentucky.[7]

The Court finds the economic loss rule does not apply to the separate service contracts here. As a result, Travelers is permitted to make tort claims based on these service contracts without being barred by the economic loss rule. An actual examination of the service contracts themselves and the surrounding facts are required to determine if these tort claims are appropriate.

    a. <u>Tort Claim of Strict Products Liability</u>

Travelers is unable to make a strict products liability claim on the basis of the service contracts. Such a claim is inherently incompatible with the mere provision of services. The only basis for such a claim would be through Dynapower's manufacture and sale of the transformer, which as previously discussed is barred by the economic loss rule. Accordingly, the Court will **DENY** Plaintiff Travelers' Motion to Reconsider as to the strict products liability claim.

    b. <u>Tort Claim of Negligence</u>

The Court notes that the negligence claim will be premised on Dynapower's performance of "start up assistance" under the service contract. The Court would like

---

provider of the service. The precedent establishing the economic loss rule does not apply to service contracts has been much too broad and consistent to justify carving out such an exception.

[7] The Court disagrees with Dynapower's assertion that the "plaintiff essentially argues that Dynapower instantly voided all of the specific warranty terms and limitations for which it had bargained merely by submitting an invoice for start-up assistance." (Docket No. 54, Pg. 2-3.) On the contrary, those limitations remain in place. However, separate and additional duties were owed to Superior as a result of Dynapower's decision to enter into a service contract independent/separate from the original contract for sale.

to speak with the parties in a telephone conference concerning this issue and may require further briefing. The Court **ORDERS** a telephone conference set for **01/02/14 at 3:30 Central Time**. The Court will place the call. The Court also **ORDERS** the parties to produce the full depositions of Morelli and Kezelian.

III. <u>Travelers' Argument that the Express Warranty Granted by Defendants was Breached</u>

Travelers has not addressed the bases under which the Court held that there was no genuine dispute that Dynapower breached the express warranty for its transformer. Instead, Travelers merely reasserts that "the fact that Defendants had specific knowledge concerning the vacuum breakers and the potential for transients, yet did absolutely nothing from a design standpoint to try to protect the transformers from those transients, either internally or externally, represents a defect in the design of the transformer and a breach of the 3 year express warranty granted Defendants." (Docket No. 53, Pg. 6.) However, as the Court previously stated, Plaintiff has not argued that a snubber should be incorporated into or recommended for *all* of Defendants' transformers and this argument is akin to a claim for beach of the implied warranty of fitness for a particular purpose—which the parties expressly waived under the contract. Accordingly, the Court will **DENY** Plaintiff's Motion to Reconsider on this issue.

CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Plaintiff's Motion to Reconsider, (Docket No. 53), is **DENIED** at this time. It is hereby ordered as follows:

(1) **IT IS HEREBY ORDERED** that Plaintiff's Motion to Reconsider is **DENIED in part** as to the strict products liability and the express warranty claims.

(2) The Court notes that the negligence claim will be premised on Dynapower's performance of "start up assistance" under the service contract. The Court would like to speak with the parties in a telephone conference concerning this issue and may require further briefing. The Court **ORDERS** a telephone conference set for **01/02/14 at 3:30 Central Time**. The Court will place the call. The Court also **ORDERS** the parties to produce the full depositions of Morelli and Kezelian.

IT IS SO ORDERED.

Date:

cc: Counsel