UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00038-TBR

TRAVELER'S PROPERTY CASUALTY    Plaintiff
COMPANY OF AMERICA, as subrogee of
SUPERIOR GRAPHITE COMPANY

v.

RAPID POWER CORPORATION and    Defendants
DYNAPOWER COMPANY

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff Travelers Property Casualty Company of America's, as subrogee of Superior Graphite Company, Supplemental Brief on the Motion to Reconsider the Order at Docket No. 51 granting summary judgment to Defendants Rapid Power Corporation and Dynapower Company. (Docket No. 61.) Defendants have responded with their own Supplemental Brief. (Docket No. 64.) This matter is fully briefed and ripe for adjudication. For the following reasons, the Court will **DENY** Plaintiff's Motion for Reconsideration. (Docket No. 53.)

BACKGROUND

I. Factual Background

A limited recitation of facts is helpful for understanding the issues involved in this Motion for Reconsideration. These facts will be supplemented as appropriate in the analysis below. The Defendants, Rapid Power Corporation and Dynapower Company

(referred to collectively as "Dynapower"),[1] design and manufacture power generation equipment for industrial clients. Subrogor Superior Graphite Company ("Superior") manufactures a variety of graphite-derived products. During the period relevant to this action, Subrogee Travelers Property Casualty Company of America ("Travelers") insured property located at Superior's Hopkinsville, Kentucky production facility.

This action arises from the manufacture and sale of a rectifier transformer by Dynapower to Superior and a subsequent, separate contract[2] for services.[3] These services were primarily to assist with the "start up" of the rectifier transformer.[4] The transformer functioned without issue until February 1, 2011, when it was destroyed in a catastrophic failure.

According to Travelers, the transformer catastrophically failed because Dynapower did not incorporate or recommend that Superior incorporate a device known as a "snubber" onto Superior's vacuum breaker, or did not, at a minimum, recommend that Superior install a snubber onto Superior's vacuum breaker. The only remaining claims by Travelers for purposes of this Memorandum Opinion and Order is that this alleged omission was a breach of the "start up" contract for services and a negligent

---

[1] During the periods relevant to this action, Defendant Rapid Power Corporation was a wholly-owned subsidiary of Defendant Dynapower Company. Like the parties in their briefs, the Court refers to the Defendants collectively as "Dynapower."

[2] As the parties have pointed out, "service contract" is a term of art describing a dedicated agreement entered into between two entities, where one entity performs all of the service for a piece of equipment, for a set period of time and for some pre-established financial arrangement. Here, there was no "service contract"—only separate, as-needed contracts for services.

[3] Superior solicited Dynapower to build the rectifier transformer at issue as a replacement for a substantially similar transformer previously built by Dynapower for the Hopkinsville facility. On February 18, 2008, Superior and Dynapower entered into a written contract for the purchase of the transformer. Subsequently, in a completely separate contract, Dynapower agreed to "start up" this same transformer.

[4] Although the parties do not dispute this point, the Court notes that emails from Bruce Williams of Superior and Mary Duncan of Dynapower, as well as the subsequent invoice, substantiate that there was a separate contract for "start up assistance." (*See* Docket No. 62-1.)

action because Dynapower had a duty to either incorporate or recommend the installation of components that could have prevented the transformer's failure.[5]

II. Procedural Background

After the transformer failure, Travelers paid Superior the proceeds of the policy that covered the transformer. Travelers, acting as subrogee to Superior, sought to recover those proceeds from Dynapower. Travelers pursued recovery on a number of theories, including breach of contract, breach of express warranty, negligence, and strict products liability. Dynapower moved for summary judgment on all counts. (Docket No. 45.)

The Court previously granted summary judgment to Defendant Dynapower on all claims. (Docket No. 51.) Plaintiff Travelers moved for reconsideration of the Court's grant of summary judgment. (Docket No. 53.) Upon further review, the Court found that it had misconstrued the factual background concerning Dynapower's service visits. Specifically, the Court found it had incorrectly held that Dynapower's performance of services was "merely part of the design manufacture, or sale of the transformer," when those services were in fact performed pursuant to separate, as-needed contracts for services.

Nevertheless, upon considering the impact of the Court's misconstruction of the factual background of Dynapower's service visits, the Court found no basis to reconsider its grant of summary judgment with respect to the strict products liability and express warranty claims. (Docket No. 58.) However, with respect to the breach of contract and negligence claims based on Dynapower's service visits, the Court ordered

---
[5] The Court has already reaffirmed its ruling that Dynapower cannot be liable, in contract or in tort, for this alleged "omission" based on the sale of the transformer. (*See* Docket No. 58.)

further briefing on this issue. (*See* Docket No. 58, at 10-11.) This opinion only considers Travelers' claims of breach of contract and negligence with respect to the *service visits* of Dynapower, and whether they can survive a motion for summary judgment.

DISCUSSION

I. Negligence Claim Based on "Start Up" Contract

Upon further review of the parties' briefing and the applicable case law, the Court finds the only viable claim Travelers has based on the separate, as-needed service contract is one in *contract*.[6] The Court recognizes that its previous Memorandum Opinion and Order implied a *negligence* claim was the only potentially viable claim based on these service contracts. (Docket No. 58, at 10-11.) However, as Dynapower recognizes in their reply, (Docket No. 64, at 4 n.4), in implying this the Court focused exclusively on the economic loss rule and the case law holding it does not apply to service contracts. It was not argued to the Court that the tort/negligence claim was precluded based on the independent duty rule, which holds that a tort action arising from a contractual relationship is precluded unless based on a tort duty that arises independent of the contract. *Lewis v. Ceralvo Holdings, LLC*, 4:11-CV-00055-JHM, 2012 WL 32607, at *5 (W.D. Ky. Jan 6, 2012); *see generally Mims v. Western-Southern Agency, Inc.*, 226 S.W.3d 833, 835-36 (Ky. Ct. App. 2007).

---

[6] Dynapower argues that Travelers did not plead breach of the "start up" agreement and has previously admitted that it is left without a remedy in contract because there were no terms or conditions to this agreement. (*See* Docket No. 53, at 5.) However, the Court disagrees with Dynapower's assessment of Travelers' claims. The Court finds that Travelers is making claims for breach of contract and negligence with respect to the "start up" agreement and notes that Dynapower specifically addressed the contractual claim in its supplemental brief. (Docket No. 64, at 2-3.)

In *Lewis*, the Plaintiffs granted Peabody Coal Company and their successors, which included the Defendants, the right to conduct mining operations and a right of ingress and egress to and from the demised premises or adjoining premises. *Id.* at *1. Plaintiffs alleged that Defendants were trespassing moving coal from foreign lands that that weren't adjoining the demised premises in violation of the lease. Because Plaintiffs were also asserting a breach of contract claim based on the same conduct, the Defendants argued the economic loss rule barred the trespass claim. The Court found the economic loss rule did not provide a basis for dismissal. *Id.* at *3.

However, the Defendants also argued that Plaintiffs' trespass claim was really a breach of contract claim "in tort clothing" and should be dismissed because it is based on the same duty created by the contract. *Id.* at *5. The Court found that Plaintiffs' claim originated from the Defendants' failure to perform the contract and was not based on the existence of an "independent legal duty." *Id.* Accordingly, the Court dismissed the trespass claim as against the one Defendant that was a party to the contract. Relying on *Lewis* and the "independent legal duty" requirement, Dynapower contends that Travelers has failed to identify or assert a source of any independent duty in this case and their "start up negligence" claim should be dismissed. (*See* Docket No. 64, at 5 n.4.)

A review of the full deposition testimony, the parties' arguments, and other evidence has made apparent that any tort claims by Travlers would not be independent from the contract. As in *Mims*, the "threshold inquiry under either a negligence or contract theory is essentially identical." *Mims*, 226 S.W.3d at 836. Accordingly, the

Court will **DENY** Plaintiff Travelers' Motion for Reconsideration, (Docket No. 53), on the negligence claim based on Dynapower's performance of "start up" services.

II. Breach of Contract Claim Based on "Start Up" Contract

While the parties agree that there was a separate contract for services for "start up," they disagree whether Dynapower's failure to recommend or incorporate the use of snubbers with Superior's vacuum breaker was a breach of this contract. The documentation of this contract does not delineate what is encompassed in "start up." (*See* Docket 62-1.) The literal, common definition of the phrase "start up" denotes services related to starting the transformer, which Defendant Dynapower did.[7] Accordingly, the Court holds that as a matter of law the contract for "start up" services was not breached by Dynapower's failure to recommend the use of snubbers with Superior's vacuum breaker. *See, e.g., Royal Ins. Co. v. Orient Overseas Container Line Ltd.*, 514 F.3d 621, 634 (6th Cir. 2008) (stating ordinarily interpretation of a contract is a question of law). Therefore, the Court will **DENY** Plaintiff Travelers' Motion for Reconsideration. (Docket No. 53), on the contract claim based on Dynapower's performance of "start up" services.

---

[7] Although not determinative because the literal, common definition of the phrase "start up" guides the Court's analysis, the Court notes there is no evidence that Superior expected or intended for the "start up" agreement to shift responsibility for potential problems with Superior's own electrical system to Dynapower. *See generally Scott v. Anchor Motor Freight, Inc.*, 496 F.2d 276, 280 (6th Cir. 1974) (explaining that contract interpretation is only a question for the jury when it is ambiguous). In fact, Steve Hargrove, Superior's complex manager, stated he did not expect the Dynapower to inspect the switch yard, to design any part of the electrical system at the plant that was external to the transformer itself, or to inspect the entire electrical system. (Docket No. 45-10, at 15-16.) Furthermore, it would be quite odd for Superior to have bargained for a sales agreement that precluded such significant financial exposure and then—almost immediately thereafter—entered into a separate agreement accepting such liability with no express terms and no additional consideration beyond the service charges.

CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Plaintiff's Motion to Reconsider the Court's Order at Docket No. 51 granting summary judgment to Defendants, (Docket No. 53), is **DENIED**.

IT IS SO ORDERED.

Date:

cc: Counsel